144 So.2d 570 (1962)
Martha DENIES
v.
FIRST NATIONAL LIFE INSURANCE COMPANY.
No. 602.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1962.
*571 Normann & Normann, Margot Mazeau, New Orleans, for defendant-appellant.
Clarence A. Frost, Reserve, for plaintiff-appellee.
Before REGAN, HEARD and McCLENDON, JJ.
REGAN, Judge.
Plaintiff, Martha Denies, instituted this suit against the defendant, First National Life Insurance Company, endeavoring to recover the sum of $1,100 as the beneficiary of a life insurance policy which insured Issac Berry against death "effected solely through violent, external and accidental means." Plaintiff asserted that the insured, who was shot, died through violent and external means, for which the policy afforded coverage.
The defendant answered and admitted the existence of the policy; however it denied liability predicated on the theory that the insured, while intoxicated, provoked a fight and was intentionally killed by a third party as a result thereof, which negated coverage.
From a judgment in favor of the plaintiff for $1,100, the defendant has prosecuted this appeal.
The record reveals that on July 22, 1956, Issac Berry and his wife, Sylvia, became involved in an argument while they were in DiCarlo's Grocery and Bar in Garyville, Louisiana. Prior to the altercation, Berry had been drinking whiskey with several friends; however, the record does not reflect the quantity he consumed or his state of sobriety.
Andrew DiCarlo, the proprietor, ordered Berry to leave his establishment after the argument and Berry, the insured, struck him in the face. At this point, Berry's cousin, Robert Pidgeon, persuaded Berry to leave the bar. When Berry reached his automobile and was preparing to enter the vehicle, DiCarlo rushed from the bar toward the departing insured and struck him. *572 Berry then began trading blows and tussling with DiCarlo and after the scuffle had been in progress for several moments, Elnora Calvin, the insured's mother-in-law, who was employed by DiCarlo, emerged from the bar with a gun pointed at Berry. When the insured saw the gun, he advanced toward Elnora and attempted to wrest the weapon from her grasp, and in so doing, the woman was thrown to the ground. At this point, Berry's wife, Sylvia, who had witnessed the above recited events, grabbed the gun from her mother's hand, fired several shots in the air and then fired at her husband, hitting him in the shoulder.
Once Berry was wounded, DiCarlo pulled Berry away from Elnora and the scuffle between these two began anew. Elnora then jerked the gun from her daughter's hand and pointed it at Issac Berry, who again advanced toward his mother-in-law. The record does not disclose whether he advanced toward her the second time for the purpose of taking the gun away, but while he was so engaged, she discharged the gun and he died moments later as the result of a wound in the abdomen.
Although the defendant subpoenaed Elnora Calvin and Sylvia Berry, who were both in court when this matter was tried, it failed to call them to testify, despite the fact that Elnora, who participated in the struggle, possessed the best knowledge as to Berry's action and her intent at the time the shot was fired that produced the fatal wound.
The insurer contends that the above recited facts exculpates it from liability by virtue of the following exclusions contained in the policy:
"* * * This policy does not cover death or injury to the insured (1) caused by the intentional act of the insured, or any other person while sane or insane; (2) while fighting, resisting arrest or violating the law; (3) while the insured is under the influence of intoxicating liquor or narcotics; * * *"
Since the insurer has rested its defense on excepted risks, the law imposes on it a duty to prove the facts which it asserts exculpates it from liability under the exclusionary provisions of the policy;[1] therefore, the primary issue posed for our consideration is whether the defendant has successfully carried that burden.
Defendant initially asserts that coverage was not afforded since the insured's death was caused by the intentional acts of his wife and mother-in-law in firing the gun.
In interpreting the language "caused by intentional act" in similar insurance policies, our courts have uniformly reasoned that the person inflicting the injury must intend the result of his action to bring the facts within the exclusionary provision of the policy. Even though the actor voluntarily uses the means which produces injury or death, this is not sufficient to vitiate coverage if the result of that action is unintended or unanticipated.
This principle was enunciated in a case entitled Brown v. Continental Casualty Co.,[2] wherein a doctor, who customarily relieved his headaches by inhaling chloroform, killed himself as a result of inhaling more thereof than he intended. The court reasoned that he intentionally administered the chemical which resulted in his death; however, his absence of intent to inhale a toxic quantity brought his demise within the scope of an accidental death classification. Thus, the insurance provision excluding coverage for death caused by the intentional act of the insured was held inapplicable.
The same result was reached in Brooks v. Continental Casualty Co.,[3] wherein the *573 insured, who was mistaken by a police officer as a holdup suspect, was shot when he did not obey the officer's warning for him to halt.
In applying the rationale of the foregoing cases to the facts before us, we notice that the record does not establish by a preponderance of the evidence whether Elnora fired the fatal shot accidentally during the course of the scuffle or whether she intended to merely scare or actually kill the insured when she pulled the trigger.
We are of the opinion that the defendant was in a position to resolve these questions by introducing the testimony of Elnora Calvin and Sylvia Berry, the parties who fired the shots. Failure to call these witnesses creates the presumption that their testimony would have been adverse to the defendant.
Counsel for the defendant argues that the witnesses were available to both parties and therefore no unfavorable inference should be drawn against the defendant because of their non-production.
This contention is without merit for the obvious reason that the defendant was required to carry the burden of proving an intentional shooting and the plaintiff cannot be expected to produce testimony that would either tend to establish intent, or to rebut a fact which has not been established.
Defendant further asserts that the guilt of the wife and mother-in-law would have prevented their truthful statement of intent in firing the shots and cites the following language from Wildblood v. Continental Casualty Co.:[4]
"Guilt has sealed the lips of the assassin and death the lips of the victim."
While it is true that the court stated that conclusions of fact must be drawn from circumstantial evidence, the facts therein are clearly distinguishable since the assassin was unknown and it was impossible to obtain the direct testimony of the assailant.
The second excepted risk relied upon by the insurer is that the insured's death was caused "while fighting, * * *, or violating the law."
The fight was between DiCarlo and Berry. It is true that Berry provoked the fight when he was in the bar; however, his cousin had persuaded him to withdraw from the affray. Thereafter, he was attacked by DiCarlo, who in turn became the aggressor. When Elnora Calvin appeared on the scene with the gun and pointed it at the deceased, the insured's action in attempting to disarm her is not fully explained. From the circumstances we can either draw the inference that he intended to assault her or that he attempted to defend himself.
It is true that had Berry been the aggressor when he was shot, then he could not recover because his fighting would have been the proximate cause of his death;[5] but the record establishes only that DiCarlo was the last aggressor and reflects no causal connection between Berry's initial aggression and his ultimate death.
Again, the defendant possessed the burden of etablishing that Berry's fighting had a causal connection with his death, and this it failed to do.[6]
With respect to defendant's contention that the insured was violating the law at the time of his death, we agree with the trial judge's observation that the record does not warrant this factual conclusion from the circumstances.
The third exclusion relied upon by the defendant is that the insured was killed *574 while under the influence of intoxicating liquor. The trial judge observed that the defendant failed to establish this as a fact and our review of the record convinces us this his conclusion was correct.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] Cole v. Mutual Life Ins. Co., 129 La. 704, 56 So. 645 (1911).
[2] 161 La. 229, 108 So. 464, 45 A.L.R. 1521 (1926).
[3] 13 La.App. 502, 128 So. 183 (1930).
[4] 182 La. 202, 161 So. 584.
[5] Campbell v. Metropolitan Casualty Ins. Co., La.App., 176 So. 233.
[6] Osborne v. People's Benev. Industrial Life Ins. Co., 19 La.App. 667, 139 So. 733.