253 So.2d 636 (1971)
Jessie CHAMBERS
v.
FIRST NATIONAL LIFE INSURANCE COMPANY OF NEW ORLEANS, Louisiana.
No. 4408.
Court of Appeal of Louisiana, Fourth Circuit.
September 10, 1971.
Rehearing Denied November 8, 1971.
Normann & Normann, Michael A. Britt, New Orleans, for defendant-appellant.
Orlando G. Bendana, New Orleans, for plaintiff-appellee.
Before REDMANN, STOULIG and BARNETTE, JJ.
Rehearing En Banc Denied November 8, 1971.
REDMANN, Judge.
Defendant appeals from a judgment awarding accidental death benefits under its accident policy.
The issue is whether insured's death by multiple gunshot wounds was within the policy's exclusion of "death * * * caused by the intentional act of the insured, or any other person, while sane or insane."
Insured was seated at a bar, about ten a. m., having just been served a beer, and was talking with the bartender. The killer entered the bar from insured's rear, walked straight towards insured and emptied a pistol into insured's back without ever seeing insured's face, and then walked out, saying not a word. The killer's wife was in the bar, but by herself and not with nor even near the insured. Only one other man was in the bar. He said he had never seen insured with the killer's wife's the bartender said they never even spoke to one another that day and he did not know whether he had ever seen them together. There was no other evidence even remotely suggestive of any motive *637 for the killing of the insured. Nor was there any evidence the killer even knew the insured.
The killer's act was intentional in the sense that the gun was not accidentally fired and the insured was not struck by a wild shot intended for another target. But this is not all that matters for determining applicability of a policy exclusion of "intentional act" results. Wildblood v. Continental Cas. Co., 182 La. 202, 161 So. 584 (1935), held such an exclusion inapplicable where there was some evidence suggesting that the killing may have been intended for a person other than the actual victim; although a killing may have been intended, the actual victim may not have been the intended victim. See also Brooks v. Continental Cas. Co., 13 La.App. 502, 128 So. 183 (1930).
Defendant argues that Wildblood does not settle the question of burden of proof. There the court found it more probable the intended victim of the unknown assassin was not the insured but a deputy sheriff, on the path to whose home the insured was shot. Here there is insufficient evidence to decide whether the insured was the person intended to be killed.
Plaintiff has the burden of proving death by violent and external means unforeseen by the victim (this suffices to show "accidental"; Cutitto v. Metropolitan L. Ins. Co., 1936, 185 La. 161, 168 So. 761). While admittedly it is then the insurer's burden to show "intentional act" in order for the exclusion to apply, it might still be concluded either (1) that the beneficiary must then show unintended-victim, as an exception to the exception the exclusion states; or, (2) that the insurer, in order to show "intentional act", must show both that the killing was intentional and that the actual victim was the intended victim.
We see the policy determination to be made as applicable to varying circumstances. In all, we consider the ordinary layman as viewing "accidental death", in an insurance-buying context, as the opposite of death from natural causes. This was approximately our Supreme Court's view in Cutitto, supra. The death of a driver run off a mountain road is accidental, in that sense; should coverage be excluded because the physical evidence reasonably shows he was deliberately run off, when nothing more is known of the circumstances? Or an insured is merely found shot to death, and no more is known; does death by violent act always mean death by intentional act, so as to exclude coverage?
We conclude the preferable decision is that the insurer must show, in its entirety, the intentional character of the act, including that the victim was the intended victim. We have some doubt we could conclude the contrary if so inclined, since requiring the beneficiary to prove the killing was erroneous would be tantamount to a second proof it was "accidental", and call for more proof on that point than the Supreme Court held sufficient in Cutitto.
There could be no doubt the fatal "multiple gunshot wounds" in Cutitto were intentional. A woman with whom insured had had an illicit relation "shot him down in cold blood, through resentment and revenge because he had discarded her and told her to leave." 168 So. at 764. No "intentional act" exclusion was referred to, and thus the case does not fully control here. But the death, because unforeseen by the insured, was held "accidental", and thus the case does prevent us from holding that the intentional killing even of an intended (but unforeseeing) victim is not accidental for our purposes (as defendant argued in supplemental brief we should hold). The insurer must prove that, although it is accidental, it is excluded from coverage because intentional.
*638 Briley v. Union Nat. L. Ins. Co., 215 So.2d 532 (La.App.1968), held a cause of action was stated by a petition alleging "accidental" death by stab wounds, despite the insurer's argument death from "injuries intentionally inflicted" was excluded by the policy sued on. The court, citing Wildblood and Brooks as holding an attack unintentional unless the victim was the intended recipient, reasoned it was the insurer's burden to allege and prove facts bringing the case within the exclusionary clause.[1]
In a somewhat analogous situation, with an identical "intentional act" exclusion, this court held the insurer bound to produce the witnesses who could have resolved "whether Elnora fired the fatal shot accidentally during the course of the scuffle or whether she intended to merely scare or actually kill the insured when she pulled the trigger." Denies v. First Nat. L. Ins. Co., 144 So.2d 570, 573 (La.App.1962). There the insured, Berry, was in a fight re-initiated by one Di Carlo,
"* * * and after the scuffle had been in progress for several moments, Elnora Calvin, the insured's mother-in-law, who was employed by DiCarlo, emerged from the bar with a gun pointed at Berry. When the insured saw the gun, he advanced toward Elnora and attempted to wrest the weapon from her grasp, and in so doing, the woman was thrown to the ground. At this point, Berry's wife, Sylvia, who had witnessed the above recited events, grabbed the gun from her mother's hand, fired several shots in the air and then fired at her husband, hitting him in the shoulder.
"Once Berry was wounded, DiCarlo pulled Berry away from Elnora and the scuffle between these two began anew. Elnora then jerked the gun from her daughter's hand and pointed it at Isaac Berry, who again advanced toward his mother-in-law. The record does not disclose whether he advanced toward her the second time for the purpose of taking the gun away, but while he was so engaged, she discharged the gun and he died moments later as the result of a wound in the abdomen." 144 So.2d at 572.
In Denies, the possibility was the fatal shot was not intended. Here, the possibility is that the victim was not intended. We believe the underlying principle in Denies is the same principle Briley applied, and is applicable here: the insurer against accidental death bears the burden of proving exclusion, and the exclusionary clause is strictly construed against it. Thus the insurer must show the injuring act was intentional, including that the actual victim was the intended victim.[2] The insurer did not meet that burden of proof, and the exclusionary clause therefore cannot be applied.
The judgment is affirmed.
NOTES
[1] After remand, the court repeated its view on burden of proof but held the burden met; 246 So.2d 265, cert. denied, 258 La. 769, 247 So.2d 865.
[2] See also the suicide-exclusion cases, where despite proof of insured having killed himself, the insurer still bears the burden of proving the killing was intentional; e. g., Webster v. New York L. Ins. Co., 160 La. 854, 107 So. 599 (1926).