286 So.2d 412 (1973)
Racheal CUMMINGS, mother of Henry Cummings
v.
UNIVERSAL LIFE INSURANCE COMPANY.
No. 5656.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1973.
Orlando G. Bendana, George Leppert, New Orleans, for plaintiff-appellant.
Nils R. Douglas and Ronald P. Nabonne, Ronald P. Nabonne, New Orleans, for defendant-appellee.
Before SCHOTT, J., and ST. AMANT and LeBRUN, JJ. pro tem.
P. C. ST. AMANT, Judge pro tem.
Plaintiff appeals from a judgment of the Civil District Court for the Parish of Orleans denying her claim for double indemnity under the accidental death provisions of a life insurance policy issued to her son Henry Cummings in which she is the named beneficiary. The face amount of the policy ($1,000.00) was paid promptly upon proof of death; the only question at issue is the claim for double indemnity.
The applicable exclusionary policy provision upon which the insurer relies reads as follows:
"12. EXCEPTIONS AND LIMITATIONSThe benefits for Accidental Death ... will not be payable if death or other loss occurs ... as a result of injuries ... intentionally inflicted by self or another person."
While under this policy language it was not necessary for the insurer to allege or prove that the assailant intended the death of his victim, but only that he intended *413 the injuries which resulted in death, Witt v. American National Insurance Company, 226 So.2d 539, 542 (La.App.4th Cir. 1969), our prior jurisprudence has established (1) that an insurer against accidental death must prove any claimed exclusions, with exclusionary clauses being strictly construed, and (2) that the insurer relying upon an exclusionary clause relating to intentionally inflicted injuries bears the double burden of proving not only that the injuring act was intentional but also that the actual victim was the intended victim, Chambers v. First National Life Insurance Company, 253 So.2d 636 (La.App. 4th Cir. 1971), and Denies v. First National Life Insurance Company, 144 So.2d 570 (La.App.4th Cir. 1962). See also Briley v. Union National Life Insurance Company, 215 So.2d 532 (La.App.1st Cir. 1968).
Although the trial judge did not assign written reasons for judgment the applicable legal principles set forth above were thoroughly argued and briefed in the trial court. In denying plaintiff's claim for the double indemnity benefit it is obvious therefore that the trial judge concluded that the insurer here had met the onerous burden of proving not only that the injuring act was intentional but also that the actual victim was the intended victim. The narrow issue before us then is whether there exists manifest error in his factual conclusion of the trial court.
The record reveals that the decedent, a young man 23 years of age, was pronounced dead on arrival at the Charity Hospital in New Orleans at approximately 11:00 p. m. on the 4th of July, 1970. A subsequent autopsy revealed the cause of death to have been multiple stab wounds of the chest resulting in lacerations of the heart and right lung.
One William F. Kelly was thereafter indicted for the murder of Henry Cummings and subsequently pled guilty to a charge of negligent homicide. At the time of the trial Kelly was confined to the Louisiana State Penitentiary at Angola. The only known witness to the altercation resulting in Cummings' death, Albert Hollins, was likewise confined to Angola but on an unrelated charge.
The testimony of both Kelly and Hollins was taken in the form of written interrogatories propounded by defendant and cross interrogatories propounded by plaintiff, all of which were duly answered under oath.
Kelly's testimony was to the effect that he had an argument with the decedent Cummings the prior day, July 3, 1970, over the ownership of the sum of $10.00; that Cummings "grabbed by wrist on my left arm and cut me on the left side of my face with a razor blade"; that on the night in question, July 4, 1970, he was entering the Cobra Lounge in New Orleans when he met Cummings coming out of the lounge, and that he "stabbed Henry Cummings to protect myself."
Hollins' testimony was to the effect that on the night in question he met Cummings on Desire Street about 9:30 p. m.; that after a few minutes conversation he requested Cummings to accompany him to the Cobra Lounge, which he did; that upon entering the lounge they met a friend known only as "Pepper"; that after some unspecified period of time they left the lounge; and that as they were leaving Kelly came up and stabbed Cummings stating "I told you that I was going to get you." While Kelly denied making any such statement Hollins further testified that he had discussed the incident with Kelly "frequently" during the time of their mutual incarceration at Angola and that "Kelly told me that he did not really want to kill Henry Cummings but just to even the score from when Henry Cummings cut him."
Plaintiff contends that this testimony is not sufficient to meet the double burden imposed upon the insurer of proving not only that the injuring act was intentional but also that the actual victim was the intended victim, citing Chambers v. First National Life Insurance Company, 253 So. *414 2d 636 (La.App.4th Cir. 1971), and Denies v. First National Life Insurance Company, 144 So.2d 570 (La.App.4th Cir. 1962).
Neither of the cited cases substantiates plaintiff's position. Denies involved a rather complicated altercation extending over a period of time and involving a number of people which culminated with the discharge of a gun by one of the participants, Elnora Calvin. This court held the insurer bound to produce the witnesses who could have resolved "whether Elnora fired the fatal shot accidentally during the course of the scuffle or whether she intended to merely scare or actually kill the insured when she pulled the trigger." 144 So.2d at page 573. The court noted that Elnora, "who possessed the best knowledge as to ... her intent at the time the shot was fired that produced the fatal wound" had been subpoenaed by the insurer and was present in court when the matter was tried. The failure of the insurer to call Elnora Calvin as a witness under those circumstances was held to create a presumption that her testimony would have been adverse to the defendant. Accordingly, the insurer failed to meet the first burden imposed upon it, that of proving that the injuring act was intentional.
The facts here are altogether different. The insurer produced the testimony of not only the assailant, Kelly, but also that of the only known witness to the altercation, Hollins. The testimony of these two witnesses leaves no doubt that the injuring act, multiple stab wounds, was intentional. The only discrepancy in the testimony is over the question of whether the acts were perpetrated in self defense, as asserted by Kelly, or whether they involved a deliberate effort at revenge, as indicated by the testimony of Hollins. This discrepancy is immaterial to this litigation since regardless of his motive Kelly intended the injuring act. In addition to this positive testimony we note the obvious difference between a firearm which could readily have been discharged unintentionally in a scuffle over its possession, as in Denies, as opposed to the situation here of multiple stab wounds which would necessarily seem to indicate an intentional act.
The second case relied upon by plaintiff, Chambers v. First National Life Insurance Company, 253 So.2d 636 (La.App.4th Cir. 1971), deals with the second requirement, that of proving that the actual victim was the intended victim. In Chambers this court summarized the facts as follows:
"Insured was seated at a bar, about ten a.m., having just been served a beer, and was talking with the bartender. The killer entered the bar from insured's rear, walked straight towards insured and emptied a pistol into insured's back without ever seeing insured's face, and then walked out, saying not a word. The killer's wife was in the bar, but by herself and not with nor even near the insured. Only one other man was in the bar. He said he had never seen insured with the killer's wife; the bartender said they never even spoke to one another that day and he did not know whether he had ever seen them together. There was no other evidence even remotely suggestive of any motive for the killing of the insured. Nor was there any evidence the killer even knew the insured."
Under these circumstances the court concluded that "the possibility is that the victim was not intended." Accordingly, the insurer was held to have failed to meet the burden of proving that the actual victim was the intended victim.
Here again the facts are altogether different. The insurer produced the testimony of the assailant and that of the witness Hollins to show (1) that the assailant knew the victim, (2) that he had a motive for attacking the decedent, and (3) that he intended to and actually did stab the person named Henry Cummings.
The degree of proof adduced here on behalf of the insurer is far greater than that which we held to be sufficient in a prior stabbing case, Witt v. American National Insurance Company, 226 So.2d 539 (La. *415 App.4th Cir. 1969), where the testimony of the assailant alone in the absence of any contradictory evidence was held adequate to discharge the burden of proof. Accordingly, we find no manifest error in the trial court judgment which is therefore affirmed.
Affirmed.