381 So.2d 847 (1980)
Gail Horne RAY
v.
FEDERATED GUARANTY LIFE INSURANCE CO.
No. 13170.
Court of Appeal of Louisiana, First Circuit.
January 21, 1980.
Rehearing Denied March 31, 1980.
James A. Gray, New Orleans, of counsel for plaintiff-appellee Gail Horne Ray.
Robert J. Vandaworker, Baton Rouge, of counsel for defendant-appellant Federated Guaranty Life Ins. Co.
Before EDWARDS, LEAR and GREENE, JJ.
GREENE, Judge.
Plaintiff was paid the face amount plus a cost of living increase due her as beneficiary on a policy of insurance issued by defendant on the life of her husband. Defendant appeals the trial court judgment which granted plaintiff triple indemnity under a rider providing additional benefits for accidental drowning.
The record establishes that insured drowned face down in a bath tub while in a *848 mental hospital on January 19, 1976. It is uncontested that he was insane at the time of his death. There was no evidence of any foul play or that insured slipped and fell into the tub. The evidence is clear that the insured placed himself face down in the tub partially filled with water. He had been experiencing delusions of grandiosity. The death certificate filled out by the coroner's office listed the death as accidental drowning.
Appellant claims that appellee did not establish that the insured's death resulted directly from accidental drowning, independent of any and all other causes. Appellant contends that the insured died while insane as a result of his own actions consisting of placing himself under water and remaining there until asphyxiated resulting in there being no "accident" as the ordinary layman understands that term.
It is necessary for us to examine the meaning of the following pertinent policy verbiage:
"Triple Indemnity. The Company will pay . . . upon proof that the death. . . resulted directly, and independent of any and all other causes, from accidental drowning . . . effected solely through external, physical, violent and purely accidental means . . . ."
It is clear that death was caused here by drowning, independent of any and all other causes. Death by drowning is death by external means since it was inflicted by an outside agency, water. It is also unnatural death as being out of the usual course of nature. An unnatural death is a violent death. Canal-Commercial Trust & Savings Bank v. Employers' Liability Assur. Corporation of London, England, 155 La. 720, 99 So. 542 (1924). The question which remains is whether this drowning was accidental.
In suits similar to this, Louisiana courts have held that a death is accidental when shown to result from violent and external means where the injury is unforeseen by the victim. See Cutitto v. Metropolitan Life Ins. Co., 185 La. 161, 168 So. 761 (1936) and Chambers v. First National Life Insurance Company of New Orleans, 253 So.2d 636 (La.App. 4th Cir. 1971). Both of these cases dealt with questions of coverage under policies insuring against accidental death, although neither is fully dispositive of the issues here since each case dealt with the insured being killed by the act of a third party. Nevertheless, the test applied in these cases is valid here. Therefore, this drowning death was accidental if it was unforeseen by the insured.
The insured was insane at the time of his death, feeling he had supernatural powers and was above the human race. A preponderance of the evidence establishes that the insured did not foresee the consequences of his actions, resulting in death. Therefore, this drowning was accidental.
We give no weight to the death certificate. A coroner's certificate of death is limited only to proof of death itself and is not admissible for the purpose of proving the cause of death. Lee v. Aetna Life Insurance Company, 147 So.2d 703 (La.App. 1st Cir. 1962).
Appellant further contends that it is not liable for any accidental death benefits regardless of whether insured was sane or insane at his death based on exclusionary provisions of its policy, set forth as follows:
"Incontestability. This Policy shall be incontestable after it has been continuously in force during the lifetime of the Insured for a period of two years from the Date of Policy except for non-payment of premiums and except for any provisions granting benefits in the event of accidental death or in the event of total disability, if contained herein."
"Suicide. If the Insured, whether sane or insane, shall die by his own hand or act within two years after the Date of Policy the liability of the Company under this Policy shall be limited to the premiums paid hereon."
The death occurred more than two years after issuance of appellant's policy. Appellant reads the above two clauses together, claiming that although after two years it can no longer contest the payment of the basic death benefit based upon the *849 insured dying by his own hand whether sane or insane, it retains the right to contest the claim for accidental benefits on those grounds. We do not believe these provisions can be read in this manner. The suicide clause by its own terms is only effective for two years after issuance of the policy. It is only during this period that death by the insured's own hand, whether sane or insane, is excepted from coverage. After this two year period passes the suicide clause has no further effect. Appellant argues that this suicide clause continues in effect at least as to the scope of the insurer's coverage for accidental death because of the wording of the incontestability clause which states that after two years the policy becomes incontestable ". . . except for any provisions granting benefits in the event of accidental death . . . ." This clause does not incorporate the suicide clause or make any reference to it. These two clauses cannot be read together to form this strained interpretation. We read this portion of the incontestability clause as preserving to the insurer the right to challenge an assertion that a death was accidental no matter how long the policy had been in force when the insured dies.
The judgment is affirmed at appellant's costs.
AFFIRMED.