CHEHARDY, Judge.
Defendant, State National Life Insurance Company (State National), appeals a district court decision in favor of plaintiff, Marie Mitchell, and against the defendant awarding the plaintiff $5,000, together with legal interest thereon from the date of judicial demand until paid in full and for all costs of the proceedings.
Plaintiff was the beneficiary of a life insurance policy of which her son, Herbert Vidrine, Jr., was the named insured. Under the section “Risks Excluded” contained in the said policy appears the following statement: “This Policy does not cover and no payment of any kind shall be made hereunder for bodily injuries or loss of life which are caused directly or indirectly, wholly or partly by: * * * (i) the intentional action of any person other than the Insured; * * On June 24,1978, Vidrine died as a result of gunshot wounds inflicted upon him by Chloe Lawler. State National subsequently denied coverage pursuant to the timely claim on the policy by Ms. Mitchell, resulting in this lawsuit.
A statement made by Chloe Lawler in the presence of detectives for St. Charles Parish, describing the events that led up to the shooting as well as the shooting itself, was introduced by joint stipulation of the parties at the trial on the merits of this case. Lawler explained in the statement that she had been living with Vidrine since August of 1977, and the Thursday before the shooting he had gone to court to get a divorce from his wife. She said he began drinking that day and continued drinking the following day, leading to his cursing her and pushing her around. She said he was later arrested by police, but he then made a phone call to her stating he was going to kill her. A friend then loaded a gun and gave it to her to protect herself if he came.
The events of the following day as related in a portion of her statement were:
“Saturday morning, at about 8:00 AM in the morning Herb called and told me that he was at the Creole Kitchen and that he was coming home. I told him to come home. He then got mad and started to threaten me again. At about 9:30 AM same day, Saturday morning, Herb came into my house and he was well loaded. He started to threatening me and pushed me around a little bit and cursed me. This went on for two to two and a half hours. He kept getting crazier and talking to God and Jesus. I was ' being silent and trying to stay out of his way. We were both sitting at the table in the dining room. I was sitting by the patio door. Herb was sitting directly across from me. He started to lean over like he was passing out. He fell out of his chair on the floor onto his back. He was semiconscious and was talking to Terry, his daughter who lives in Baton Rouge. I saw that his mind was drifting and decided to get the hell out of there. I stept [sic] over him and * * * got my purse off the desk. The gun was in the purse. I had intentions to walk around the corner to get to the hall to get out of the house to call the police. Right when I turned to leave, I was in the bedroom doorway, I saw Herb jump up like he came out of another world. He was cursing and came toward me. I reached in the purse, got the gun out, and shot at him till I wouldn’t shoot any more. When the gun quit shooting I ran out of the house. I ran to All State which is *779 located in the Majoria Shopping Center. I went inside to use the phone but all the lines were tied up. I went to the store next door and called the police. I went on the corner and waited for the police. A police car passed, then another came so I flagged it down and went back to my house with the police.”
The record reflects that a true bill against Chloe Lawler was subsequently returned by the Grand Jury, and she later pleaded guilty to the charge of manslaughter. She was sentenced to five years in the Department of Corrections at hard labor, but said sentence was suspended and she was placed on active probation for five years.
In giving his reasons for judgment from the bench, the trial court judge stated:
“ * * * [T]he issue at hand is in reference to a policy of insurance and the proceeds, and of course there is no question as to who the beneficiary is and the fact that the person died, and the policy is in evidence. The difficulty comes whether or not under the terms * * * the policy is payable because as the insurance company indicates * * * there was intentional action of another person which caused the death of the decedent.
“The record reflects the person died of a gun-shot wound, and as the particular defense attorney introduced the record of the manslaughter charge of R.S. 14:31 and the date of April the 24th where the person had pled guilty for criminal purposes and received five years Department of Corrections at Hard Labor which was suspended. The statement of the person who killed the individual indicated that what had happened is more to an extent of justifiable homicide in which the individual came at her and for fear of her life, protected herself and shot him. The question is that, whether that is an intentional killing which would fall within the ambit of the policy to deny recovery. Also the other issue is that on the plea of guilty, and of course at the present time, this court having the benefit of being the one that sentenced the lady, the fact that a killing had taken place, a homicide, the fact that a person had died would warrant that that particular person serve some time in the state penitentiary. However, due to the fact that the charge by the District Attorney on the Bill of Information which was a Grand Jury indictment, the Court took into consideration the justifiable homicide aspect of it, and now the defense with the mitigating factors which warranted that the particular individual did not spend any time in any particular jail or be incarcerated. So the question is whether or not the manslaughter conviction which is in the boy-kin shows her rights were explained and she pled to this, whether or not that particular provision overcomes the statement of the individual, stating that it’s more or less justified. And of course if we find the latter, then we find that there should be recovery for, to the beneficiary. If we find the former, then of course we find no beneficiary recovery. “This Court is of the opinion on the criminal side, taking into consideration the case it has before it, and I’m showing that this case will be followed down on a line on appeal, this court is of the opinion for the reasons given that there should be recovery for the beneficiary in the amount as stated because this court is of the opinion that based upon the evidence heard that within the portions of the policy that there was no recovery action of anyone, and recovery should be had.”
We cannot agree and reverse.
In the case of Culotta v. Security Industrial Insurance Co., 325 So.2d 863 (La.App. 2d Cir. 1976), the plaintiff, while on duty in a liquor store where he was employed, was shot by an unknown bandit during a robbery of the store. The plaintiff did not resist the robber in any way, yet the assailant pointed his revolver directly at Culotta and shot him. In holding that the policy’s exclusionary clause, similar to the one in the present case, precluded coverage on the plaintiff’s injuries, the court said at 864— 865:
*780 “Plaintiff-appellant alleged the trial judge erred in his determination that the armed robber intended to inflict bodily harm on plaintiff; that, if this is a finding of fact, it would have to be assumed the armed robber went to E-Z Liquor Store, not with the intention of robbing the store but rather with the intention of inflicting injury on the insured, and that the robbery was incidental to murder rather than murder being incidental to robbery.
* * * * * *
“Defendant cites the case of Tornabene v. Atlas Life Insurance Company, Inc., 295 So.2d 10 (La.App. 4 Cir. 1974), in which the court reviews most of the Louisiana cases involving policies excluding from coverage injury or death resulting from an intentional act of a person other than the insured. In rendering judgment for plaintiff, the court held the insurance company failed to carry the burden of proving the killing was intentional or that the deceased was the intended victim.
“Defendant acknowledges the burden is on the insurer to prove the victim was the intended victim. However, defendant urges that in the instant case all questions are clearly and concisely answered by the police report and that the situation was further clarified by the portion of the stipulation which states: ‘Plaintiff, Joe E. Culotta, did not resist the robber in any manner and yet the robber pointed his revolver directly at Mr. Culotta and fired the revolver at him.’
* * * * * *
“In Tornabene the court, commenting on the decision in Wildblood v. Continental Casualty Co., 182 La. 202, 161 So. 584 (1935), stated that ‘this opinion [Wild-blood] by implication of its reasoning may place upon the plaintiff the burden of showing “reasonable probability” that the intended victim was another person. However, we do not so interpret the case. ... We interpret Wildblood simply as holding that the intentional act exclusion does not apply if the actual victim was not the intended victim.” ’
“The interpretation of exclusionary clauses in policies such as the one here in question has been judicially refined and there now emerges a fairly well-defined rule. In those cases in which the evidence shows that the insured, though violently killed, was thought by the assailant to be a person other than the individual against whom the violence was directed, that is, if the assailant was mistaken in the identity of his victim, an exclusion such as contained in the instant policy would not prevent recovery. However, if the insurer carries the burden of proving that (1) the assailant recognized the insured as an adversary or was not mistaken in the identity of his victim; and (2) he intentionally inflicted an injury on the insured, neither the latter nor his survivors can recover under a policy containing ‘an intentional act’ exclusion. Briley v. Union National Life Insurance Co., 246 So.2d 265 (La.App. 1st Cir. 1971).
“In the instant case there is no evidence the robber shot the insured in the mistaken belief that he was some other person. On the contrary, the evidence, comprised of the police report and the stipulation, preponderates that the robber intended to shoot the person at whom he aimed the gun, who happened to be the insured.”
Similarly, in the case of Briley v. Union National Life Insurance Co., 246 So.2d 265 (La.App. 1st Cir. 1971) the insured was killed by a series of stab wounds inflicted by an assailant who testified that he did intend to stab the insured “because he was going to stab me.” The court decided that death of the insured was encompassed in the provisions of the exclusionary clause of the policy because it was not a case of mistaken identity on the part of the assailant and the wounds were intentionally inflicted by him upon the insured.
In the case of Cummings v. Universal Life Insurance Company, 286 So.2d 412 (La. App. 4th Cir. 1973), this court also held there was no coverage under a similar exclusionary clause where the assailant had stabbed the insured, regardless of the fact *781 that the attacker had testified he acted in self-defense. The court said this issue was immaterial to that litigation because regardless of his motive the attacker intended his injuring act.
In Cummings, supra, the court also distinguished the case of Chambers v. First Nat. Life Ins. Co. of New Orleans, 253 So.2d 636 (La.App. 4th Cir. 1971). In that ease the insured was seated in a bar when the killer entered the bar from the insured’s rear, walked up to him and emptied a pistol into the insured’s back without ever seeing the insured’s face. There was no evidence suggesting any motive for the killing or even that the assailant knew the insured. Because of these circumstances the court in Chambers, supra, concluded that it was possible that the victim was not the intended one.
Obviously, the facts of Chambers differentiate it from Cummings, as well as the present case, where the attackers knew their victims, had a motive for the attack (even though the motive may have been that the assailant believed he was acting in self-defense), and the attacker intended to and actually did shoot or stab the person that the act was perpetrated upon.
For the reasons assigned, the district court decision against the defendant and in favor of the plaintiff is hereby reversed and it is ordered, adjudged and decreed that there be judgment in favor of the defendant, State National Life Insurance Company, and against the plaintiff, Marie Mitchell, dismissing her suit at her costs.
REVERSED.