454 So.2d 1260 (1984)
Patricia TAYLOR, Plaintiff-Appellee,
v.
SECURITY INDUSTRIAL INSURANCE COMPANY, Defendant-Appellant.
No. 16368-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
*1261 Gahagan & Gahagan by Marvin F. Gahagan, Natchitoches, for plaintiff-appellee.
Talbot, Sotile, Carmouche, Marchand & Marcello by Victor L. Marcello, Donaldsonville, for defendant-appellant.
Before PRICE, JASPER E. JONES and SEXTON, JJ.
SEXTON, Judge.
Plaintiff sued as beneficiary to collect the benefits allegedly due under a life insurance policy for the death of her husband, the insured. Plaintiff also sought statutory penalties and attorney's fees. The trial court awarded judgment in plaintiff's favor, granting plaintiff the benefits due under the policy, as well as statutory penalties and attorney's fees. We affirm the trial court's award of policy benefits, and vacate the trial court's judgment insofar as it granted plaintiff statutory penalties and attorney's fees.
Plaintiff in this cause is Patricia Taylor, a resident of Winn Parish. Ms. Taylor is the widow of Julius Taylor, and the beneficiary of an insurance policy which insured his life. Julius Taylor was the decedent *1262 whose life was insured, and the former husband of Patricia Taylor. Mr. Taylor died on October 12, 1982. Defendant in this cause is Security Industrial Insurance Company, the insurer that issued the policy insuring the life of Mr. Taylor.
Julius and Patricia Taylor were married on November 2, 1970. Although his employment record prior to 1979 was not discussed at trial, it appears that Mr. Taylor began working at a wood mill sometime in 1979 or 1980, and thereafter worked there full time for two years. Mr. Taylor either quit or was laid off his job at the wood mill in March of 1982 for undetermined reasons. Mr. Taylor was admitted to Huey P. Long Memorial Hospital in Pineville from March 19, 1982 to March 22, 1982, and treated for an alcohol dependency. From the time of his hospital discharge in March until August of 1982, Mr. Taylor worked part-time at several endeavors. During this interim, Mr. Taylor sold Avon products, maintained a large garden located on his mother's property, and did lawn work. In August, Mr. Taylor was hired as a laborer by Country Pride, a Natchitoches-based chicken processing plant. Mr. Taylor was required to work in a damp, cool atmosphere and contracted pneumonia in September. He missed two weeks of work. After recovering from this bout of pneumonia, Mr. Taylor was terminated by Country Pride.
Mr. Taylor was readmitted to Huey P. Long Memorial Hospital on October 10, 1982, suffering from a recurrence of pneumonia. He was subsequently diagnosed as suffering from a lung infection, which developed as a complication of his pneumonic condition. On October 12, a Swan-Ganz catheter was inserted into Mr. Taylor's lungs in an apparent attempt to drain excess fluid from the lungs. However, Mr. Taylor's pulmonary artery was inadvertently perforated by the catheter, causing his death.
On July 12, 1982, exactly three months before his death, Julius Taylor purchased a life insurance policy from Security Industrial Insurance Company through its authorized agent and sales representative, A.A. Bolton.
The insurance policy provided in pertinent part that "Security Industrial Insurance Company agrees to pay the benefits described in this policy" in "the amount of insurance given in the Schedule ... at the death of the Insured." The policy was issued in the amount $2,000 and listed Patricia Taylor as the beneficiary.
The crucial provision of the policy states that "this policy shall take effect on the Date of Issue, provided the Insureds are then alive and in sound health, but not otherwise." (emphasis added.) The policy's date of issuance is August 1, 1982.
On December 29, 1982, plaintiff filed a formal claim for the $2,000 worth of coverage provided by the policy. Plaintiff's counsel made formal demand upon defendant for the policy proceeds on January 20, 1983. However, the defendant refused to make payment under the policy provisions.
Plaintiff thus filed suit seeking the $2,000 policy coverage, statutory benefits, and attorney's fees. In a judgment rendered December 9, 1983, the trial court granted judgment in plaintiff's favor, awarding her $2,000 in policy benefits, a 12% statutory penalty, and $3,500 in attorney's fees. In written reasons for judgment, the trial court concluded that Julius Taylor was not excluded from policy coverage by the policy's sound health clause, because "(t)he facts of this case overwhelmingly prove that the named insured... was in sound health at the time of issue of the policy on August 1, 1982."
Defendant-appellant Security Industrial raises two issues on appeal. Security Industrial first contends that the trial court erred in finding that Julius Taylor was in sound health on the date of the policy's issuance, and therefore not precluded from coverage by the policy's sound health clause. In its second assignment of error, defendant asserts that the trial court erred in assessing statutory penalties and attorney's fees against it. These issues will hereinafter be singly addressed.

*1263 I.

Sound Health Clause
The courts of this state have on many occasions addressed policy exclusions which preclude coverage if the insured is not in sound health on a specified date. It has thus been determined that "sound health" clauses do not violate public policy, and are therefore legally enforceable. Martin v. Security Industrial Insurance Co., 367 So.2d 420 (La.App. 2d Cir.1979), writ refused, 369 So.2d 1364 (La.1979); Borer v. Security Industrial Life Insurance Co., 245 So.2d 5 (La.App. 1st Cir. 1971), writ refused, 258 La. 575, 247 So.2d 394 (1971); Fournier v. Gulfco Life Ins. Co., 241 So.2d 287 (La.App. 1st Cir.1970). It is axiomatic, however, that an insurer relying on a coverage exclusion to defeat recovery under an insurance policy has the burden of proving the applicability of the exclusion. Little v. Kalo Laboratories, Inc., 406 So.2d 678 (La.App. 2d Cir.1981), writs denied, 410 So.2d 1133 (La.1982); Borden, Inc. v. Howard Trucking Co., Inc., 372 So.2d 242 (La.App. 1st Cir.1979); Cummings v. Universal Life Ins. Co., 286 So.2d 412 (La.App. 4th Cir.1973). Moreover, this court has held that, in order to establish the applicability of a sound health clause, an insurer must adduce "clear and convincing evidence that the insured was not in sound health." Martin, supra, at 367 So.2d 423. Furthermore, in addition to presenting clear and convincing evidence of the insured's lack of sound health, the insurer must adduce date specific proof that the insured was not in sound health at the precise time stipulated by the policy as determinative. Martin, supra, at 367 So.2d 423.
Thus the dispositive issue of this first portion of the appeal is whether the trial court manifestly erred in determining that the insurer did not establishby clear and convincing, and date-specific proof that the insured, Julius Taylor, was not in sound health on August 1, 1982. We conclude, for the following reasons, that the trial court did not commit manifest error in concluding that the insurer did not meet this burden of proof.
In attempting to establish that Julius Taylor was not in sound health on August 1, 1982, Security Industrial adduced evidence that the decedent was an alcoholic, a diabetic, and suffered from pneumonia. Defendant offered into evidence, in this connection, medical records compiled during decedent's two day stay in the hospital just prior to his death in the early morning hours of October 12. These records reflect that decedent was diagnosed by treating physicians as suffering from diabetes, pneumonia of the lower lobe of the left lung, and alcoholism. Decedent was observed to be in acute respiratory distress.
Defendant also introduced into evidence medical records dating from decedent's three day hospitalization in March of 1982, some six and one-half months prior to his death. The diagnosis at that time was that decedent was suffering from alcoholism and diabetes. The defendant's expert, Dr. Malcolm Russell, opinedon the basis of the March medical reportsthat the decedent was not of sound health as of August 1, 1982. Dr. Russell never examined the decedent.
Although the defendant thus presented considerable evidence that the decedent was not in good health as of August 1, 1982, this evidence is not dispositive when viewed in light of the totality of the evidence. When the evidence is assessed as a whole, it is clear that the trial court did not commit manifest error in determining that the defendant did not adduce clear and convincing, and date-specific proof that the decedent was not in sound health on August 1, 1982.
It is pertinent in this connection that the decedent worked without interruption between the time of his hospital discharge in March and the time he contracted pneumonia in September. During the two year interim preceding his contraction of pneumonia, decedent worked at numerous jobs, performed lawn work, tended a garden, sold Avon products, and worked as a laborer at a wood mill and at a chicken processing *1264 plant. With the possible exception of the sales position, all of these jobs primarily involved physical labor. The record does not reflect that decedent suffered any health-related work interruptions other than his hospitalization in March and his pneumonic bout in September. It appears, moreover, that in the two year period preceding his death, the decedent often worked at two or more jobs simultaneously for significant periods of time. Against the backdrop of the entirety of the evidence, decedent's hospitalization appears to be an isolatedand the onlyinstance of disabling sickness which occurred prior to the crucial date of August 1, 1982.
With respect to the allegation of alcoholism, there was considerable lay testimony thatalthough decedent engaged in a drinking bout of several weeks prior to his hospitalization in Marchhe otherwise drank in relative moderation and fairly infrequently. With respect to the diagnosis of diabetes made in March, it appears that this condition was at that time of relatively mild magnitude: decedent was not placed on medication until several months thereafter, and was merely advised to reduce carbohydrate and starch intake. With respect to decedent's pneumonic condition, it is clear that this ailment did not materialize until September, well after the August 1 date of issuance. It moreover appears that this pneumonic condition was traceable in whole or in part to the cool, damp working conditions at the chicken processing plant at which decedent started working in August, and this ailment therefore sheds little light on his health condition as of August 1.
It is further significant, in assessing decedent's health as of August 1, that decedent passed an employer sponsored physical examination by a physician shortly before going to work for Country Pride in August. Insurance agent A.A. Bolton, who personally interviewed the decedent and processed his life insurance application on July 8, 1982, stated that he did not detect any observable health deficiencies in decedent's condition on that date. Mr. Bolton stated in this connection that, "He seemed to me to be in good health."
In ruling that the defendant did not establish with the requisite specificity that decedent was not in sound health on August 1, the trial court placed substantial emphasis on the discharge summary and prognosis compiled upon decedent's discharge from hospitalization on March 22, 1982. The treating physician stated in the medical report compiled prior to discharge that the decedent's prognosis was good; that no activity limitations were imposed; and that the decedent was released to return immediately to full time work.
We conclude that, considering the evidence as a totality, the trial court did not commit manifest error in determining that the defendant did not adduce clear and convincing evidence and date-specific proof that the decedent was not in sound health on August 1, 1982. Thus, the policy exclusion relied on is inapplicable, and the plaintiff is entitled to recovery under the policy in the amount of $2,000.

II.

Statutory Penalties
LSA-R.S. 22:656 states that if an insurer "fails ... without just cause" to pay the benefits due under a life insurance policy "within sixty days after the date of receipt of due proof of death ... the amount due shall bear interest at the rate of eight percent per annum from date of receipt of due proof of death by the insurer until paid." Statutory penalties for the refusal to pay life insurance benefits are appropriate where the insurer does not have a reasonable justification for its refusal. Thus, the presence or absence of a reasonable basis for refusal to pay is determinative in analyzing the propriety of penalty assessment. Carr v. Port Ship Service, Inc., 406 So.2d 632 (La.App. 4th Cir. 1981), writ denied, 412 So.2d 85 (La.1982).
There is substantial medical documentation in the record of the decedent's incipient ailments of diabetes and alcoholism as of October, 1982, the date of decedent's *1265 death. These diseases were apparently in merely embryonic stages in August of 1982, and the defendant did not establish with the requisite specificity that these ailments were significant health factors in August of 1982. Nevertheless, under the circumstances of this case, the subsequent materialization of these diseases constituted ample justification for the insurer to refuse payment, and litigate the viability of these health defects as a defense to recovery. Although a beneficiary may ultimately be determined to be entitled to policy benefits, this judicial determination does not in and of itself justify the invocation of penalties, where the insurer had reasonable grounds to believe that it had a valid defense to payment based on the insured's lack of good health. McClelland v. Security Industrial Ins. Co., 426 So.2d 665 (La.App. 1st Cir.1982), writ denied, 430 So.2d 94 (La.1983).
For the foregoing reasons, we affirm the trial court's award to plaintiff-beneficiary of the $2,000 worth of benefits due under the instant life insurance policy. We reverse and vacate that portion of the trial court's judgment awarding plaintiff statutory penalties and attorney's fees. The costs of this appeal are to be equally assessed between plaintiff and defendant.
AFFIRMED in PART, REVERSED in PART, and RENDERED.