ARMSTRONG, Judge.
Plaintiff, Jo Ann Durand, instituted this action against defendant, Horace Mann Life Insurance Company, seeking to recover accidental death benefits for the death of her husband, under a life insurance policy issued by defendant. Defendant now appeals from a trial court judgment in plaintiff’s favor. We affirm.
In January, 1982, plaintiff’s husband, Stanley Durand, received fatal injuries in an airplane crash in Picayune, Mississippi. Prior to his death Mr. Durand purchased a life insurance policy from defendant, naming plaintiff as beneficiary. Upon Mr. Du-rand’s death plaintiff received thé normal death benefits but defendant refused to tender the accidental death benefits, claiming that an exclusion applied.
The accidental death coverage did not apply if the death of the insured resulted directly or indirectly from:
“8. Travel or flight in any kind of aircraft (including falling or otherwise descending from or with such aircraft in flight) while the Insured is participating in aviation training in such aircraft, or is a pilot, officer, or other member of the crew of such aircraft.”
*580 The matter was submitted to the trial court on the depositions of plaintiff and John Drake, an air safety investigator employed by the National Transportation Safety Board (NTSB). The NTSB report on the crash was also placed in the record.
The decedent was flying with an associate, Ken Reibert, at the time of the crash. According to the plaintiff, the decedent had possessed a pilot’s license for fifteen or twenty years, and had been a flight instructor at a local flying club for two or three years. The decedent had informed the plaintiff that he was going to look at an airplane with Reibert, who had requested that the decedent accompany him. The decedent and Reibert use to take trips together in Reibert’s plane, and according to the plaintiff, Reibert “was always going to see an aircraft that he was going to buy.” The plaintiff had no knowledge of whether or not her husband had been serving as a pilot or co-pilot at the time of his death.
John Drake investigated the airplane crash for the NTSB. The airplane in which the decedent was traveling was a twin-engined Beechcraft. No; flight plan had been filed by either the decedent or Reibert, and their destination was unknown. Flight plan documents for Central and South America were found in the wreckage, and the aircraft was carrying an estimated one hundred eighty-eight gallons of fuel when it crashed.
Drake testified that the aircraft was equipped with a throw-over control yoke; there was only one control wheel but it could be moved to either the right or left pilot position. He said there were mechanical indications that the yoke had been locked in the right pilot position. However, he also said that the rudder-control pedals were on the left, for access and operation by the person in the left pilot position. There were no rudder-control pedals for the person seated in the right pilot position.
Drake concluded that the decedent had been in the right pilot position. He based this conclusion on several factors. The plaintiff had related to him that her husband had crawled away from the aircraft— he lived for approximately one week after the crash. Drake felt it would have been a “whole lot easier” for the decedent to have exited from the door which was on the right side of the plane. Also, an analysis of the injuries suffered by both men was consistent with Reibert having been on the left and the decedent on the right.
He also relied on information acquired from unnamed persons who had flown with the decedent or those who had known him, including his brother Donald Durand. Donald Durand informed him that the decedent was rated to fly multi-engine aircraft and always rode in the right seat when flying. Drake also discovered that Reibert had no official flying experience in multi-engine aircraft, but it was not disputed that he was a qualified pilot.
But despite Drake’s conclusions and opinions, he appeared to hedge his testimony at times. At one point he said that it wouldn’t make much sense for the control yoke to have been in front of Reibert “had he been in a seat that didn’t have rudder pedals.” But, as previously discussed, the left seat, in which Drake concluded Reibert had been sitting, had the only rudder pedals in the aircraft. Also, when questioned if it was possible that the control yoke could have been on the left side and moved over by the occupants in the process of trying to deal with an emergency, Drake stated, “Yes it is. I merely testified as to where we found it [the control-yoke].”
Based upon this evidence the trial court held that the defendant failed to meet it’s burden of proving that the decedent fell into the exemption provided in the policy. On appeal the defendant claims that the trial court erred because the evidence proved that the decedent was piloting the aircraft which crashed.
The trial court’s finding may not be disturbed by the court unless we find that the record evidence either, (1) did not furnish a sufficient basis for the finding, or (2) nonetheless, the finding was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, Co., 283 So.2d 716 (La.1973). See also Virgil v. American Guaranty & Liability Insurance Company, 507 So.2d 825 (La.1987).
*581 The trial court correctly placed the burden of proof on the defendant-insurer to prove by a preponderance of the evidence that the decedent fell into the exclusion. See Cummings v. Universal Life Insurance Company, 286 So.2d 412 (La.App. 4th Cir.1973); Little v. Kalo Laboratories, Inc., 406 So.2d 678 (La.App. 2d Cir.1981).
Plaintiff contends that Mr. Drake cannot be accepted as an expert in this case because federal law prohibits the use of reports and conclusions of the NTSB as evidence in civil suits. Plaintiffs argument is somewhat misplaced. Under 49 C.P.R. § 835.3 (1985) NTSB employees may testify as to the factual information obtained during the course of the investigation, “including factual evaluations embodied in their factual accident reports.” The purpose behind 49 U.S.C. § 1903(c), cited by the plaintiff, is to prevent the use of NTBS reports, or the testimony of NTSB employees, as to the cause of the accident. See 49 U.S.C. § 1441(e), Monger v. Cessna Aircraft Company, 812 F.2d 402 (8th Cir.1987), and American Airlines Inc. v. United States, 418 F.2d 180 (5th Cir.1969). The cause of the accident is not at issue. Arguably, the factual conclusions of Mr. Drake may be considered “factual evaluations,” and thus were properly before the court.
Defendant cites the case of LeBreton v. Penn Mutual Life Insurance Co., 67 So.2d 565 (La.1953), for the proposition that there is a three-part test to determine whether a person is a pilot or member of a crew of an aircraft within the meaning of a life insurance policy exclusionary provision. LeBreton involved a policy exclusion similar to the one in the case at bar. The decedent was a naval pilot. Although we do not believe LeBreton sets forth a definitive “three-part test”, the factors viewed by that court are instructive, but in all probability were considered by the trial court in the case at bar.
The decedent was a long time pilot, had been a flight instructor, and was qualified to fly multi-engine aircraft like the one which he was in at the time of the crash. Reibert, the only other occupant of the plane, was not officially qualified to fly these aircraft. The NTSB investigator felt that the decedent had been in the right pilot seat with the control yoke (wheel) in front of him. However, if he was piloting the aircraft it must be assumed that Rei-bert, in the left seat, was operating the rudder control pedals, since there were no pedals for the right pilot position.
We find Drake’s testimony to be inconclusive as to who was piloting the aircraft. Drake could not reconcile the control yoke being in front of the decedent and the rudder-control pedals in front of Reibert. Despite Reibert’s lack of “paper qualifications” as a pilot of multi-engine aircraft, it appears to us that it is just as reasonable to believe that Reibert was piloting the aircraft and after the crash the control yoke was moved as the two men escaped from the wreckage, before it caught fire. Both men were found away from the wreckage.
Considering the evidence as a whole we find that there was a sufficient basis for the trial court’s finding that the defendant failed to prove by a preponderance of the evidence, i.e., that it was more probable than not, that the decedent was piloting the aircraft and therefore fell into the exclusion clause. We are unable to say that such a finding was clearly wrong.[1]
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.

. Defendant’s argument is primarily directed to decedant’s role as a pilot. But the record also fails to establish by a preponderance of the evidence that the exclusion provision otherwise applies.