h CARAWAY, J.
Three days after submitting an application for life insurance to defendant, the applicant was hospitalized for hypertension, a condition from which she had not previously suffered. The application form requested the disclosure of any information concerning a prior history of illnesses, including hypertension. The applicant was not asked by defendant to submit to a physical examination before the issuance of the life insurance policy six weeks later. The applicant died one year after completing her application, and the defendant refused to honor the policy. The defendant claims that if it had been advised of the applicant’s hypertension, the policy would not have been issued. Upon defendant’s motion for summary judgment, the trial court dismissed this suit by the policy’s beneficiary. Finding genuine issues of material fact, we reverse and remand.

Facts

On September 9, 1999, Patricia H. Rogers (“Rogers”), age 46, completed a Member Application for Group Term Life Insurance underwritten by AAA Life Insurance Company (“AAA”). The Member Application was addressed to Rogers’ daughter, C.K. Rogers. The application was date-stamped as received by AAA on September 13, 1999, and thereafter, AAA issued its Group Insurance Certificate (“Certificate”) naming Patricia Rogers as an insured under Group Policy LTL-97(6/99). The Certificate Effective Date was October 28, 1999.
I ¡/The application contained a section concerning the applicant’s pre-existing health conditions and personal history which started out “Member: Please answer these questions ...”
1. In the past 20 years have you been treated for or told by a physician that you have or had heart disease, chest pains, high blood pressure, ul-cerative colitis, kidney disorder, diabetes, any mental or nervous disorder, alcoholism, lung disorder, cancer, or tumors?
Rogers answered this question in the negative by marking an “x” in the box beneath the “No” column. Nevertheless, three days later Rogers was hospitalized because of high blood pressure.
The application for group life insurance coverage did not require that applicants undergo a physical examination, but by signing the application, Rogers authorized the release of medical information and medical records to AAA. The following statement appeared immediately above the signature line where Rogers signed the application:
I understand that the coverage will take effect on the Effective Date shown on the Certificate of Insurance, provided the first premium has been paid and there has been no change in my insura-bility since the date of the application.
The application provided no further explanation of the meaning of “insurability.”
Upon its issuance, the Certificate provided that it was the “legal contract between the Certificate holder and AAA Life Insurance Company.” The definitions portion of the Certificate states that “Evidence of Insurability means proof satisfactory to Us that an Insured is an acceptable risk under the Group Policy.” The General Provisions portion of the policy contained the following incontestability clause:
laExcept for non-payment of premiums, We will not contest the validity of Your insurance after it has been in force for a period of two (2) years from the date of issue, during Your lifetime. No statement made by You on the application will be used to contest a claim unless:
• Your death occurs within two (2) years of the Certificate date of issue;
*105 • Any answer, representation or acknowledgment made by You on the application for insurance was not true and/or complete; and
• If We had known of the truth, We would not have issued the Certifícate in its present form as to the amount of insurance and/or the premium rate.
Rogers died on September 8, 2000. Her death certificate showed that the immediate cause of death was intracranial hemorrhage, secondary to anteroseptal myocardial infarction, the underlying causes of which were described as coronary artery disease and brain death.
Thereafter, on May 23, 2001, AAA notified the policy beneficiary, Crystal Rogers Gee, that it had reviewed the medical records of Rogers’ hospitalization of September 12,1999. AAA’s letter advised:
We have referred this information to our Underwriting Department and have been advised that if we had been aware of the change of health, we would have declined this policy.
Accordingly, as the policy is contestable based on these misrepresentations, the Company has no choice but to rescind coverage under this policy and deny your claim.
Thereafter, Gee filed suit to recover the proceeds of the policy, alleging AAA’s arbitrary and capricious denial of the claim. AAA moved for summary judgment, arguing that the group life insurance policy under which Rogers was insured never took effect because of a change in her insurability prior to the effective date of the policy. To support its motion, AAA attached a copy of Rogers’ application, a copy of the Certificate, a ^partial copy of Dr. Richard Smith’s deposition, and the affidavit of Paul Reed, Assistant Vice President and Chief Underwriter for AAA.
Excerpts from Dr. Smith’s deposition indicate that Rogers went to St. Francis Medical Center on September 12, 1999, suffering from dizziness with nausea and vomiting. A history and physical were taken at that time, and Rogers’ blood pressure was 182/97. She had acute labyrinth-itis, causing her to have dizziness and nausea. Furthermore, according to Dr. Smith, she had “new onset hypertension since we had not had a history of hypertension in the past.” Later in the deposition, Dr. Smith confirmed that hypertension is the same as high blood pressure and a leading cause of strokes, and heart and kidney problems. He also indicated that individuals whose hypertension is controlled do not have an increased mortality rate, but individuals with uncontrolled hypertension have a higher mortality rate than the general public.
Reed’s affidavit stated that he had personal knowledge of AAA’s underwriting practices, including insurability determinations, and that under AAA’s underwriting practices, an onset of uncontrolled hypertension would constitute a change in the applicant’s insurability. The affidavit also stated that “had Patricia Rogers been suffering from uncontrolled hypertension on the date of her application” AAA would not have underwritten a life insurance policy on her.
Gee opposed AAA’s motion for summary judgment and filed a cross motion for summary judgment. Her attached affidavit stated that she was Rogers’ child, that she personally knew about her mother’s health, and that |Bshe recalled when her mother obtained a life insurance policy from AAA on September 9, 1999. According to Gee’s affidavit, her mother was then in sound health and was not suffering “from any disease or illness whatsoever,” including high blood pressure.
*106 After hearing and argument, the trial court granted summary judgment in favor of AAA, and dismissed Gee’s demand. It is from this judgment that Gee appeals.

Discussion

Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Hamdan v. State Farm Mut. Auto. Ins. Co., 36,883-CA (La.App.2d Cir.3/5/03), 839 So.2d 1017.
The evidence indicates that Rogers did not have a history of hypertension on September 9 when she answered the application’s question number 1 concerning her blood pressure. Therefore, the record shows that her answer to that question was truthful. Three days following her application, she was diagnosed with “new onset hypertension.” Although |fithe record is not entirely clear, it indicates that the application was submitted to AAA pri- or to Rogers’ September 12 hospitalization and diagnosis.
AAA argues that this new diagnosis represented a change in Rogers’ insurability which she was obligated to report to AAA prior to the policy’s issuance. Additionally, AAA asserts its right to make the determination concerning Rogers’ insura-bility and to void the policy because of Rogers’ misrepresentation.
By submitting her application and discussing matters concerning the state of her health, Rogers was offering to enter the contract of insurance with AAA. She could understand from the application that her offer was subject to AAA’s review of her health and medical records. AAA indicated its consent to the contract by issuance of the Certificate on October 28. Regarding error in the consent and formation of the contract, La. C.C. art.1949 provides:
Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party.
Despite AAA’s assertions to the contrary, there was no express provision in the application that required Rogers to report any change in her health as it related to any of the medical conditions inquired about in the application. The application reflected that the determination of insurability was totally within AAA’s power, and an explanation of AAA’s measurement of an applicant’s insurability was not given. Thus, the application did not expressly make known to Rogers that any change in the ^status of her blood pressure would amount to a cause and material consideration that would prevent AAA from consenting to the life insurance contract.
In reaching this view about the policy application’s provisions, we distinguish this case from those cases cited by AAA which involved clauses in life insurance policies expressly requiring the insured to be in sound health on the date of issuance of the policy. Taylor v. Security Indus. Ins. Co., 454 So.2d 1260 (La.App. 2d Cir.1984); McClelland v. Security Indus. Ins. Co., 426 So.2d 665 (La.App. 1st Cir.1982). A provision informing the applicant that her good health must continue through the time of issuance of the policy is a much clearer expression of intent which does not *107 compare to the undefined insurability concept upon which AAA now attempts to rely.
The remaining issue under Article 1949 is whether Rogers should have known that her newly developed hypertension was a cause under the contract which would prevent AAA from insuring her life. As to this issue, we find that genuine issues of material fact remain. The excerpts of the deposition of Dr. Smith are very brief. The condition of Rogers’ health between the time of her September 12 hospitalization and the October 28 contract date is not discussed. Her response to treatment of hypertension is not revealed. The question of what she should have known about her health and how that might relate to her pending application for life insurance is fact intensive and remains for trial. Accordingly, the grant of AAA’s motion for summary judgment is hereby reversed and the case remanded to |sthe trial court for further proceedings. Costs of appeal are assessed to appellee.
REVERSED AND REMANDED.